UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES THOMAS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| vs. } | **CASE NO. CV 03-B-1832-S** |
| } | |
| **AVENTIS PHARMACEUTICALS,** } | |
| **INC.; STEVEN DAVIS; and** } | |
| **MARK BOLSIUS,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

Currently before the court is a Motion for Summary Judgment filed by defendants Aventis Pharmaceuticals, Inc. ("Aventis"), Steven Davis, and Mark Bolsius.[1] (Doc. 25.)[2] Plaintiff James Thomas filed this action on July 17, 2003, alleging that defendants unlawfully discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Doc. 1.) Plaintiff further alleges that defendants are liable under Alabama law for the tort of outrage during the course of their alleged discrimination, and that defendant Aventis negligently and/or recklessly supervised defendants Davis and Bolsius. (*Id.*) Upon consideration of the record, the submissions of

---

[1] Defendant Bolsius was misidentified in plaintiff's complaint as "Mark Bolsuies," (Doc. 1), and defendants have consistently retained that name with a "[sic]" notation in the style of all documents they have filed with this court this case. The court will use the correct name in this Opinion.

[2] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motion for Summary Judgment is due to be granted.

## I. FACTUAL SUMMARY

Plaintiff is over the age of sixty. He was a sales associate for Aventis and its predecessors for over thirty years until March 2003, when he was terminated. Defendant Davis was plaintiff's Area Manager and direct supervisor at Aventis. (Doc. 26, Ex. A ¶¶ 2-3; Doc. 26, Ex. B at 141.) Defendant Bolsius was a Regional Director at Aventis and Davis's direct supervisor. (Doc. 26, Ex. A ¶ 10; Doc. 26, Ex. B at 141.)

Pharmaceutical sales associates such as plaintiff visit physicians and attempt to persuade them to write prescriptions for their employer's products. (Doc. 26, Ex. A ¶ 4.) Plaintiff was responsible for calling on each doctor in his assigned territory every two to four weeks. (*Id.*) Since approximately 2000, Aventis has utilized a "pod" (or team) system for monitoring and measuring the company's sales activities in a given area. (Ex. 26, Ex. A ¶ 5.) In the pod system, a group of sales associates and managers work together towards common goals, and the pod as a whole, rather than its individual members, is accountable for its performance. (*Id.*; Doc. 26, Ex. B at 115.) Plaintiff's pod consisted of six or seven sales associates at various times. (Doc. 26, Ex. B at 117.) None of these other associates were supervised by defendant Davis. (*Id.* at 140-42; Doc. 26, Ex. A ¶ 6.)

On July 11, 2002, Davis and Bolsius conducted a disciplinary meeting with plaintiff due to his "confrontational behavior." (Doc. 26, Ex. G at 1.) Plaintiff was counseled that further problems would lead to additional discipline and possibly termination. (*Id.*) On

August 22, 2002, plaintiff had a "counseling session" with Davis, Bolsius, and a Human Resources representative, Karen Clemente. (Doc. 29, Ex. 2 at 96-97; Doc. 26, Ex. D.) This meeting concerned plaintiff's violations of Aventis's Primary Care Territory General Procedures ("General Procedures"), a written document that sets forth the rules and guidelines for sales associates to follow. (Doc. 26, Ex. C.) During the meeting, plaintiff admitted to several job activities that violated the General Procedures. (Doc. 26, Ex. D.) Plaintiff asserts that he was given the General Procedures for the first time on September 4, 2002. (Doc. 26, Ex. B at 338-39.)

Davis issued a formal written warning to plaintiff on September 13, 2002; this warning detailed a number of actions for plaintiff to take to avoid further discipline. (Doc. 26, Ex. H; Doc. 26, Ex. A ¶ 11.) At a meeting of sales associates on September 17, 2002, plaintiff used profanity and disparaged Aventis to a recently hired associate. (Doc. 26, Ex. E; Doc. 26, Ex. A ¶ 8.) Davis issued an update to the written warning on October 10, 2002, in which plaintiff's failures to comply with the initial warning were detailed. (Doc. 26, Ex. I; Doc. 26, Ex. A ¶ 12.) Also on October 10, 2002, Davis attempted to conduct a scheduled field visit with plaintiff. (Doc. 26, Ex. J; Doc. 26, Ex. A ¶ 13.) During this visit, Davis planned to give plaintiff his mid-year review, complete an inventory of plaintiff's sample supply, and update him on his written warning. (*Id.*) However, plaintiff "refused to allow [Davis] to work with" him that day. (Doc. 26, Ex. A ¶ 13; *see also* Doc. 26, Ex. B at 509-10; Doc. 26, Ex. J.) Five days later, Davis sent plaintiff a letter following up on the abbreviated meeting and attempted to reschedule the visit. (Doc. 26, Ex. K; Doc. 26, Ex. A ¶ 14.) In this

letter, Davis wrote: "I also want to state for the record that I was extremely offended by your use of profanity and the obscene names that you called me during our meeting. You have been counseled in the past about your behavior and adherence to the Aventis values. This behavior must stop!" (Doc. 26, Ex. K.) The letter then noted specific examples where plaintiff had failed to correct work procedures that he had been warned were deficient, and concluded with this admonition:

> All of the expectations from your written warning and mid-year review remain in place. To date, you have not met the expectations or requirements as indicated in your written warning dated September 13, 2002 or as indicated in the counseling memo dated August 22, 2002. It is imperative that you meet these expectations and that you achieve and maintain a satisfactory level of performance and behavior in all respects, to avoid any further disciplinary action.

(*Id.*) After this letter, there is no record of any further correspondence or meetings involving plaintiff's job during the year 2002.

However, on February 4, 2003, Davis issued a final written warning to plaintiff, again detailing plaintiff's failure to comply with the expectations previously set forth for him. (Doc. 26, Ex. L; Doc. 26, Ex. A ¶ 15.) Davis wrote that plaintiff "must make IMMEDIATE, SIGNIFICANT and SUSTAINED improvement" in all of the areas of job performance discussed in the letter. (Doc. 26, Ex. L at 6.) The letter further warned plaintiff that he may be subject to termination for failing to meet the expectations outlined for him. (*Id.*) On March 19, 2003, Davis called plaintiff to schedule a meeting that is typically referred to at Aventis as a "help me understand" meeting between plaintiff, Davis, and Matt Cullen, Davis's Regional Director at the time. (Doc. 26, Ex. A ¶ 16.) The purpose of this meeting

was "to go over the items outlined in the Final Written Warning, and to assist Plaintiff and his management in understanding his plan for attaining the outlined goals." (*Id.*) Davis and Cullen intended to counsel plaintiff on the specific areas in which he needed to improve so that he could avoid termination. (*Id.*) Davis left a voice mail for plaintiff informing him of the scheduled "help me understand" meeting at approximately 11:20 a.m. on March 19, 2003. (*Id.*; Doc. 26, Ex. M.)

Plaintiff contacted Davis at approximately noon on March 20, 2003, and told Davis that he would not participate in the "help me understand" meeting.[3] (Doc. 26, Ex. M.) Plaintiff asserts that, based upon the advice of his attorney and his physician, he refused to participate in the type of meeting that he believed Davis and Cullen would have. (Doc. 26, Ex. A at 555.) Davis sent plaintiff an electronic mail at 5:12 p.m. on March 20, 2003, rescheduling the meeting for March 24. (Doc. 26, Ex. M.) Davis instructed plaintiff that he was to confirm that he would be attending the rescheduled meeting by 5:00 p.m. on March 21. (*Id.*) Davis further wrote, "Jim, if you do not attend this meeting, it may be deemed insubordination and will subject you to further disciplinary action, including and up to termination." (*Id.*) In an electronic mail sent on the afternoon of March 21 in reply to Davis's message, plaintiff again refused to meet with Cullen and Davis. (Doc. 26, Ex. N.)

---

[3] Plaintiff had repeatedly been told he needed to check his voice mail at least three times every day. (Doc. 26, Ex. H at 4; Doc. 26, Ex. I at 4; Doc. 26, Ex. J at 6; Doc. 26, Ex. L at 2.) Although Davis left a voice mail concerning the meeting more than twenty-four hours prior to the scheduled start of the meeting, (Doc. 26, Ex. A ¶ 16), plaintiff did not contact anyone about the meeting until one hour before it was to start (Doc. 26, Ex. M).

Plaintiff was terminated on March 24, 2003. (*Id.*) He was replaced in his pod by Julie Sanderson, who was approximately forty years old at that time. (Doc. 29, Ex. 2 at 129.)

Plaintiff filed his complaint against defendants on July 17, 2003. (Doc. 1.) Plaintiff presents as evidence of discrimination a statement made by Davis in December of 1999 to the effect that Aventis did not want employees to stay longer than thirty years. (Doc. 26, Ex. B at 81-82.) Plaintiff also alleges that he was one of two people in his area who was not given a raise in March of 2000, despite the fact that he "was at 112 percent of quota." (*Id.* at 82.) Plaintiff states that he, the oldest person in the area, and the second oldest person in the area, were the only two who were not given raises. (*Id.*) Plaintiff also states that when fellow pod member Vikki Thomas complained about Aventis's treatment of plaintiff to her manager at Aventis, John Fuqua, Fuqua said that plaintiff had been working for too long and needed to retire. (*Id.* at 58-59.)

The main thrust of plaintiff's argument is that the General Procedures, and other job expectations that Davis repeatedly told plaintiff to comply with, were not applied to or followed by other sales associates at Aventis. For instance, plaintiff asserts that Davis, after giving plaintiff a memorandum about expected work habits, later "invalidated" that document and the expectations therein when plaintiff threatened to retire. (*Id.* at 407-10; *see also* Pl.'s Resp. to Def.'s [sic] Mot. for Summ. J. ("Pl.'s Br.") at 2.) In essence, plaintiff argues that because defendants wanted him to retire due to his age, he was held to unrealistic work standards that no other sales associates were actually expected to meet. (Pl.'s Br. at 7-10.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III.  DISCUSSION

**A.     Plaintiff's Claim for Age Discrimination**

Plaintiff asserts that defendants discriminated against him because of his age, in violation of the ADEA.[4] (Doc. 1 ¶ 15.) Aventis argues that plaintiff cannot establish a prima facie case of discrimination. (Mem. in Supp. of Defs.' Summ. J. Mot. ("Defs.' Br.") at 11-14.) Alternatively, Aventis argues that even if the court finds that plaintiff has established a prima facie case, Aventis had legitimate, non-discriminatory reasons for its actions. (*Id.* at 14-17.)

There are two primary methods of showing a prima facie case of age discrimination. "In proving an age discrimination case, a plaintiff can establish a prima facie case of discrimination through either direct evidence of discrimination or a variation of the four-part test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, L. Ed. 2d 668 (1973) for circumstantial evidence." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (citing *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)). Plaintiff has attempted to provide evidence for both methods.

### 1.   Direct Evidence of Age Discrimination

Plaintiff contends that he has offered direct evidence of age discrimination. Relying on the definition of "direct evidence" in the context of employment discrimination as set forth in *Wright v. Southland*, 187 F.3d 1287 (11th Cir. 1999), plaintiff argues:

---

[4]   Davis and Bolsius do not meet the definition of "employer" under the ADEA and therefore may not be held individually liable for age discrimination. *See* 29 U.S.C. § 630(b); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995). To the extent that plaintiff has brought claims of age discrimination against Davis and Bolsius, those claims are due to be dismissed.

8

> The plaintiff's supervisor told him that the company did not want employees to remain after thirty years. Thereafter, they set out to build a file to justify his termination. Clearly this is "evidence from which a reasonable fact finder could find, by a preponderance of the evidence a causal link between an adverse employment action" and plaintiff's age.

(Pl.'s Br. at 11 (citing *Wright*).) The quoted language is a near match of the definition of "direct evidence" that Judge Tjoflat found in *Wright* to be appropriate for this context.[5]

"Direct evidence is evidence, which if believed, proves the existence of the fact in issue *without inference or presumption*." *Maynard v. Board of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003) (internal quotations and citations omitted; emphasis added). Judge Tjoflat's definition of "direct evidence" in *Wright v. Southland* – that direct evidence is "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic"[6] – is "mere *obiter dictum*, as it was not necessary to the resolution of the case, and neither of the two other members of the panel joined that portion of the opinion." *Ferrell v. Masland Carpets, Inc.*, 97 F. Supp. 2d 1114, 1123 n.11 (S.D. Ala. 2000) (quoting *Copley v. Bax Global, Inc.*, 80 F. Supp. 2d 1342, 1348 (S.D. Fla. 2000)). Indeed, the Eleventh Circuit has reasserted the well-established definition of direct evidence, *see Maynard*, 342 F.3d at 1289, which is set

---

[5]   "'[D]irect evidence,' in the context of employment discrimination law, means evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic." *Wright*, 187 F.3d at 1293.

[6]   *Wright*, 187 F.3d at 1293.

forth above, and which is the definition of "direct evidence" this court will apply to the facts of this case.

The court finds that plaintiff's alleged direct evidence is not "evidence, which if believed, proves the existence of the fact in issue without inference or presumption." *Id.* Nothing in plaintiff's evidence is sufficient to allow a reasonable jury to find *without inference* that Aventis terminated plaintiff because of plaintiff's age. Statements referring to a plaintiff's need to retire do not lead directly to the conclusion that plaintiff's termination must have been motivated by his age. *See Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1105 (11th Cir. 2001) ("[R]emarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."); *Damon*, 196 F.3d at 1358-59 ("[Direct] evidence must indicate that the complained-of employment decision was *motivated* by the decision-maker's ageism."). Plaintiff must therefore attempt to establish a prima facie case using circumstantial evidence.

### 2. Circumstantial Evidence of Age Discrimination

Because plaintiff has presented circumstantial evidence to prove his discrimination claim, the court's analysis of that claim is governed by the tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir.1993); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993). Under this framework, a plaintiff bears the initial burden of establishing a prima facie case of discrimination. *See Burdine*, 450 U.S.

at 252-53. If plaintiff successfully establishes a prima facie case, the burden of production shifts to Aventis to articulate a legitimate, non-discriminatory reason for its employment decision. *McDonnell Douglas*, 411 U.S. at 802. If Aventis succeeds in carrying this burden, then plaintiff must prove that Aventis's articulated reason is a mere pretext for unlawful discrimination. *See Burdine*, 450 U.S. at 253. At all times, a plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether Aventis's articulated reason is pretextual, Aventis is entitled to summary judgment on plaintiff's claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

In order to establish a prima facie case of age discrimination, a plaintiff must satisfy four requirements:

> (1) that [he] was a member of the protected group of persons between the ages of forty and seventy; (2) that [he] was subject to adverse employment action; (3) that a substantially younger person filled the position that [he] sought or from which [he] was discharged; and (4) that [he] was qualified to do the job for which she was rejected.

*Damon*, 196 F.3d at 1359 (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998)). The court assumes, without deciding, that plaintiff can establish a prima facie case of age discrimination "because [the court] find[s] that [Aventis's] legitimate reasons for the decision are dispositive." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).

Plaintiff may establish that an articulated reason is a pretext for discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 (11th Cir. 2000) (quoting *Burdine*, 450 U.S. at 255-56). If plaintiff chooses to establish pretext by showing that Aventis's articulated reason is unworthy of credence, he must attack that reason "head on and rebut it." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). That is, plaintiff must offer evidence that "casts sufficient doubt on [Aventis's] proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)); *see also Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005-06 (7th Cir. 2001). The Seventh Circuit wrote in *Clay*:

> Pretext means a dishonest explanation, a lie rather than an oddity or an error. A "pretext for discrimination" means more than an unusual act; it means something worse than a business error; "pretext" means deceit used to cover one's tracks. On the issue of pretext, our only concern is the honesty of the employer's explanation. Thus, even if [Aventis's] reasons for [plaintiff's] termination were mistaken, ill considered or foolish, so long as [defendant] honestly believed those reasons, pretext has not been shown.

*Id.* (internal citations and quotations omitted.) The "pretext analysis focuses on a narrow question: Would the proffered evidence allow a reasonable factfinder to conclude that the

12

articulated reason for the decision was not the real reason?" *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1276 (11th Cir. 2002) (citations omitted).

It is undisputed that plaintiff repeatedly refused to meet with Davis and Bolsius in March of 2003. This type of insubordination is clearly a legitimate, non-discriminatory reason for terminating plaintiff. Furthermore, plaintiff's continued failure to improve his performance, which necessitated the meeting at issue, is a legitimate, non-discriminatory reason for the repeated warnings to plaintiff.

Because Aventis has proffered legitimate reasons for terminating plaintiff, plaintiff has the burden of establishing that those reasons are pretextual, and that discrimination was the actual motivating reason. Plaintiff attempts to do so with the following argument:

> [D]efendant lists numerous alleged work rule violations which it contends plaintiff committed as its justification for the termination. Plaintiff contends that they are all pretextual. Each will be addressed individually but the single most telling indication of pretext is that plaintiff's conduct did not change over his thirty four years of employment. It, however, did not become objectionable until he had been there thirty years and was told by his supervisor that the company did not want him after thirty years.

(Pl.'s Br. at 7.) Plaintiff's argument is essentially that all of his alleged deficiencies in job performance were pretextual and that the meeting he failed to attend, which was called to discuss his continuing deficiencies, was therefore also a pretext for discrimination.

However, plaintiff's evidence does not "cast[] sufficient doubt on [Aventis's] proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'"

*Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)). Plaintiff's allegations that Aventis used his allegedly deficient job performance as a pretext for terminating him because of his age are unconvincing because of the repeated efforts defendants made to inform plaintiff of those deficiencies and to help him fix them. (*See, e.g.*, Doc. 26, Ex. G; Doc. 26, Ex. D; Doc. 26, Ex. H; Doc. 26, Exs. H-M.) As these efforts continued without success, plaintiff began to be warned of the risk of termination, but he was not actually terminated until after he refused, more than once, to attend a meeting with his superiors. Likewise, plaintiff's termination for refusing to attend a required meeting could not reasonably be said to be a pretext for unlawful age discrimination. Plaintiff has not produced any evidence that suggests intentional age discrimination, rather than general insubordination, motivated the termination decision after this incident. The fact that defendants decided to reschedule the meeting after plaintiff's initial refusal to attend, (Doc. 26, Ex. M), contradicts plaintiff's allegation that defendants were looking for a reason to fire him because of his advancing age. His subjective belief that he was terminated because of his age is insufficient to carry his claim beyond summary judgment. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) ("To survive summary judgment, the plaintiff must . . . present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice."). Also, plaintiff's subjective belief that he was terminated based on his age does not attack defendants' legitimate reasons "head

on and rebut [them]," as plaintiff must do in this situation if he is to survive summary judgment. *Chapman*, 229 F.3d at 1030.

Because plaintiff lacks evidence that Aventis's legitimate, nondiscriminatory reason for terminating him was merely a pretext for age discrimination, summary judgment on this claim is due to be granted.

**B.      Plaintiff's Claim for Negligent or Reckless Supervision**

Plaintiff asserts that Aventis should be liable for negligent or reckless supervision of Davis and Bolsius. (Doc. 1 ¶ 18.) Plaintiff alleges that "as a consequence [of the negligent or reckless supervision] the individual defendants caused [Aventis] to violate the age discrimination in employment act and to be guilty of the tort of outrage." (*Id.*) Defendants argue that this claim should now be dismissed because plaintiff has failed to show any "specific acts of incompetency on the part of Davis or Bolsius that would give rise to this claim." (Defs.' Br. at 18 (citing *Lane v. Cent. Bank of Ala. N.A.*, 425 So. 2d 1098, 1100 (Ala. 1983)).) Plaintiff does not address this argument, or indeed his supervision claim at all, in his opposition to the summary judgment motion. By not addressing this claim at that time, plaintiff abandons it. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (noting rule that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *see also Keel v. United States Dep't of Air Force*, 256 F. Supp. 2d 1269, 1279 n.27 (M.D. Ala. 2003) (stating that claims raised initially but not further argued will not be addressed, but that the court "will limit its discussion instead to the claims actually urged by Plaintiff's counsel in opposition to Defendants' dispositive

motion"). Therefore, plaintiff's claim against Aventis for negligent or reckless supervision will be dismissed at this time.

**C.     Plaintiff's Claim for Outrage**

Plaintiff asserts that defendants are liable for the tort of outrage under Alabama law. (Doc. 1 ¶¶ 16-17.)  This claim is founded upon plaintiff's August 22, 2002, meeting with Davis and Bolsius.  (Pl.'s Br. at 11.)  Plaintiff contends that they chose that particular day to hold this meeting with him because it was his first day back from short-term disability leave related to stress.  (Doc. 26, Ex. B at 477-78.)  According to plaintiff, Davis and Bolsius intended to inflict further stress upon plaintiff by calling for this session on this particular day.  (*Id.* at 478.)  Plaintiff requested that the meeting be postponed, but his request was denied.  (*Id.* at 488.)  Plaintiff describes his meetings with Davis and others generally as "intended to cause stress" and "mean-spirited."  (*Id.* at 124.)

To recover on an outrage claim under Alabama law, a plaintiff must demonstrate that defendants' conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it."  *Harrelson v. R.J.*, 882 So. 2d 317, 322 (Ala. 2003) (quoting *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043 (Ala. 1993)).  "Extreme" conduct is defined as conduct which is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Id.* (quoting *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980)).  This tort is limited to only the most egregious of circumstances.  To date, the

Alabama Supreme Court has recognized the tort of outrage in only three areas: "(1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment." *Stabler v. City of Mobile*, 844 So. 2d 555, 560 (Ala. 2002) (citing *Thomas*).

In the employment context, Alabama courts have been unwilling to recognize outrage claims for conduct more offensive than defendants' conduct in the instant case. *See, e.g.*, *Grantham v. Vanderzyl*, 802 So. 2d 1077, 1080-81 (Ala. 2001) (affirming summary judgment where plaintiff, an operating room nurse, alleged that defendant, a surgeon, threw a patient's blood on her during surgery); *Nipper v. Variety Wholesalers, Inc.*, 638 So. 2d 778, 780-81 (Ala. 1994) (affirming summary judgment for defendant employer on an outrage claim where defendant investigated plaintiff store manager by, among other things, interviewing her for an hour and a half, as a result of a hotline complaint); *Surrency v. Harbison*, 489 So. 2d 1097, 1005-06 (Ala. 1986) (affirming directed verdict for defendants on an outrage claim and stating that "[t]he rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind" (citing Restatement (Second) of Torts, § 46, cmt. d (1965))).

The facts alleged by plaintiff fall well below the minimum standards established by the Alabama courts for a defendant to be held liable for the tort of outrage. A meeting between employee and employers in the normal course of business, no matter how stressful or when called, is not "atrocious and utterly intolerable in a civilized society." *Harrelson*,

17

882 So. 2d at 322. Defendants' motion for summary judgment on plaintiff's outrage claim is therefore due to be granted.

## IV.  CONCLUSION

For the reasons stated herein, the court is of the opinion that defendants' Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 31st day of May, 2005.

_____*Sharon Lovelace Blackburn*
**SHARON  LOVELACE  BLACKBURN**
**UNITED STATES DISTRICT JUDGE**